2024 IL App (2d) 230234
No. 2-23-0234
Opinion filed November 22, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-1167 |
| JASON CARTER, | ) ) ) | Honorable Alice C. Tracy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Birkett and Kennedy concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial in the circuit court of Kane County, defendant, Jason Carter, was convicted of two counts of home invasion (720 ILCS 5/19-6(a)(6) (West 2018)) and a single count of criminal sexual assault (*id.* § 11-1.20(a)(2)). Defendant argues on appeal that (1) under the one-act, one-crime rule, the criminal sexual assault conviction and one of the home invasion convictions must be vacated; (2) the trial court erred in ordering him to serve 85% of his sentence; and, (3) because his criminal sexual assault conviction must be vacated, the trial court erred in ordering him to register as a sex offender. We vacate one of defendant's home invasion convictions and his criminal sexual assault conviction. We also vacate that portion of the sentencing order requiring him to serve 85% of his sentence. However, because defendant was convicted of home

invasion predicated on a sex offense, we affirm the judgment requiring him to register as a sex offender.

¶ 2                                    I. BACKGROUND

¶ 3      As pertinent here, defendant was charged by indictment with two counts of home invasion (counts I and II) and one count of criminal sexual assault (count III). Count I alleged that defendant "knowingly and without authority entered the dwelling place of another, *** when he knew or had reason to know that another person was present *** and while within said dwelling, committed the offense of criminal sexual assault against S.M." Count II alleged that defendant "knowingly and without authority entered the dwelling place of another, *** and remained in said dwelling until he knew or had reason to know that one or more persons was present, and while inside said dwelling committed the offense of criminal sexual assault against S.M." Count III alleged that defendant placed his penis in S.M.'s mouth, knowing that she was unable to understand the nature of the act or give consent.

¶ 4      At trial, S.M. testified that, on the evening of June 15, 2019, she and her roommates went to some bars in St. Charles for a bachelorette party. S.M. drank alcohol during the outing. At some point, she met up with her boyfriend, Vance Conroyd, and they went to his home in St. Charles. S.M. was intoxicated at that point and fell asleep on a couch. She testified that she woke to find defendant's penis in her mouth. S.M. was acquainted with defendant, who was Conroyd's next-door neighbor. After S.M. woke up, defendant removed his penis from her mouth, zipped up his pants, and left. Conroyd testified that, on the date in question, he lived in a unit in a duplex. Defendant lived in the other unit.

¶ 5      Defendant testified that, at about 9 p.m. on June 15, 2019, he met with some friends to celebrate his birthday. They went to a couple of bars. After no more than about two hours,

defendant went home. According to defendant, there was an "open door" policy at the duplex where he and Conroyd lived. Defendant explained: "there's a screen door and then a door, so if the door is open, you can just come in, if you saw somebody." It was common for defendant and Conroyd to enter each other's property without knocking or ringing the doorbell. When defendant arrived at the duplex after his birthday celebration, he entered Conroyd's unit to "see what they were up to." Once inside, he saw a person lying on the couch. The person was facing the back of the couch. He believed that the person was Maria Batka, with whom defendant was involved in a physical relationship. Defendant touched the person on the shoulder, and she started to fondle his crotch. He then exposed his penis, and she immediately turned toward him and put it in her mouth. They then "both looked at each other," and defendant realized the woman was not Batka.

¶ 6    After the jury returned guilty verdicts on all three counts of the indictment, the matter was continued for posttrial motions and sentencing. Defendant filed a motion for a new trial, in which he argued that the State failed to prove his guilt beyond a reasonable doubt and that the trial court erred in barring him from testifying about his alcohol consumption before the incident. The trial court denied defendant's motion and sentenced defendant to a seven-year prison term, noting that, upon release, he would have to register as a sex offender for life. The court indicated that defendant would receive day-for-day credit toward his sentence. In addition, the court stated that "[t]he criminal sexual assault and one home invasion count will merge into the first home invasion count." However, the written sentencing order indicated that defendant was to serve 85% of his sentence and that a separate conviction had been entered on the criminal sexual assault count and on each home invasion count. Defendant filed a timely notice of appeal.

¶ 7                              II. ANALYSIS

¶ 8    Defendant raises three contentions on appeal, none of which, he admits, was brought in the trial court. We first consider whether defendant's criminal sexual assault conviction and one of his two home invasion convictions must be vacated. Although, during sentencing, the trial court indicated that counts II (home invasion) and III (criminal sexual assault) merged into count I (home invasion), the court ultimately entered separate judgments of conviction on all three counts.

¶ 9    Defendant acknowledges that he forfeited the issue by failing to raise it in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 185-86 (1988). However, defendant asks us to review the issue under the plain-error rule, which allows appellate review of an unpreserved error when

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

"[O]ne-act, one-crime violations fall within the second prong of the plain error doctrine as an obvious error so serious that it challenges the integrity of the judicial process." *People v. Coats*, 2018 IL 121926, ¶ 10. The one-act, one-crime rule bars surplus convictions and sentences by prohibiting convictions of more than one offense carved from the same physical act. *People v. King*, 66 Ill. 2d 551, 566 (1977). In cases involving multiple acts, convictions of more than one offense are permissible unless some offenses are, by definition, lesser included offenses. *Id.* As defendant observes, under these principles, a single unauthorized entry into a dwelling will support only one home invasion conviction, regardless of the number of victims involved. See, *e.g.*, *People*

*v. Carr-McKnight*, 2020 IL App (1st) 163245, ¶ 113. Here, there was only one unauthorized entry into Conroyd's dwelling, so one of defendant's home invasion convictions must be vacated.

¶ 10     The question remains: which home invasion conviction should be vacated? The following principles apply:

> "When two convictions violate the one-act, one-crime doctrine, the sentence should be imposed on the more serious offense, and the less serious offense should be vacated. [Citation.] Where the punishments are the same for both offenses, *** the sentence should be imposed on the offense that 'has the more culpable mental state.' [Citation.]" *Id.* ¶ 114.

Here, the two home invasion counts were equally serious and were based on the same mental state. In such instances, a reviewing court may remand the matter to the trial court to determine which conviction should be vacated. *People v. Millsap*, 2012 IL App (4th) 110668, ¶ 20. In this case, however, because the trial court indicated during sentencing that count II merged into count I, we can vacate the conviction on count II.

¶ 11     We also agree with defendant that, because the home invasion charge was predicated on criminal sexual assault, the latter is a lesser included offense of the former. So, the criminal sexual assault conviction (count III) must also be vacated. See *People v. Reveles-Cordova*, 2020 IL 124797, ¶ 21. The State acknowledges that we may address the issue as plain error and that the trial court should have merged his convictions into a single home invasion conviction. We accept the State's concession.

¶ 12     We next consider whether the trial court erred in ordering defendant to serve 85% of his sentence for home invasion (count I). Subject to numerous exceptions, an offender serving a prison sentence is entitled to one day of sentence credit for each day served. 730 ILCS 5/3-6-3(a)(2.1) (West 2018). One exception provides that an offender serving a sentence for home invasion is

eligible for no more than 4.5 days of sentence credit per month served *if* the trial court "has made and entered a finding *** that the conduct leading to conviction for the enumerated offense resulted in great bodily harm to a victim." *Id.* § 3-6-3(a)(2)(iii). Here, the trial court made no such finding. Although defendant did not raise the error in a motion to reconsider his sentence, he correctly observes that the issue is reviewable under the plain-error rule. See *People v. Burns*, 2020 IL App (3d) 170103, ¶ 76. Here, too, the State concedes that the trial court erred and that the error is reviewable. Accordingly, that portion of the trial court's order requiring defendant to serve 85% of his sentence is vacated.

¶ 13     The remaining issue is whether the trial court erred in ordering defendant to register as a sex offender. Defendant acknowledges that trial counsel did not challenge this aspect of the trial court's judgment and that the issue is arguably forfeited. Defendant does not seek review under the plain-error rule. Instead, he argues that he is entitled to relief because, by failing to preserve the issue for review, trial counsel violated defendant's right to the effective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

¶ 14     *Strickland* requires a showing that counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* We conclude that a challenge to the order that defendant register as a sex offender would have been meritless. Accordingly, trial counsel's failure to raise such a challenge engendered no prejudice within the meaning of *Strickland*.

¶ 15     Section 3 of the Sex Offender Registration Act (Act) (730 ILCS 150/3 (West 2018)) requires a "sex offender" to register with and provide certain information to local law enforcement

authorities. Under section 2 of the Act, (*id.* § 2(A)(1)(a)), a person is a sex offender when they have been convicted of a "sex offense."

¶ 16    Criminal sexual assault is among the offenses defined as a "sex offense" in section 2(B) of the Act (*id.* § 2(B)(1)). Home invasion is not. See *id.* Although defendant was found guilty of criminal sexual assault, that conviction merged with his home invasion conviction, as we have determined. Thus, defendant argues that he was not convicted of a "sex offense" that would require registration as a sex offender. We disagree.

¶ 17    Defendant is correct that, under the plain language of sections 2(A) and 2(B), home invasion is not a *listed* "sex offense" such that registration is required for *all* home invasion convictions. However, neither the statutes nor our analysis ends there. As with felony murder and armed violence, home invasion involves the commission of specific predicate offenses (720 ILCS 5/19-6(a)(1)-(6) (West 2020) (formerly section 12-11(a)(1)-(6) (see 720 ILCS 5/12-11(a)(1)-(6) (West 2010)))). Each of the alternative acts or predicates are "construed as separately proscribed offenses." *Reveles-Cordova*, 2020 IL 124797, ¶ 20. Sex offenses, such as criminal sexual assault, are included among those predicates, and the only reason defendant does not stand convicted of that offense separately is because he committed it in another person's home.

¶ 18    As others have observed, it is "theoretically and practically impossible" (*People v. Skaggs*, 2019 IL App (4th) 160335, ¶ 39) to somehow commit home invasion predicated on a sex offense under section 19-6(a)(6), *without* committing the underlying sex offense on which the home invasion charge was based. See *Reveles-Cordova*, 2020 IL 124797, ¶ 21; see also *Whalen v. United States*, 445 U.S. 684, 691-92, 694 n.8 (1980) ("[w]e have simply concluded that, [under the relevant statute], Congress intended rape to be considered a lesser offense included within the offense of a killing in the course of rape"). Moreover, the Act specifically provides that a qualifying

conviction of a registerable "sex offense" includes a violation of any former state law, or a violation of any law, including that of a foreign country, that is "substantially equivalent to any offense listed" in the Act. See 730 ILCS 150/2(B)(2), (C) (West 2018). The Act provides that "[c]onvictions that result from or are connected with the same act, or result from offenses committed at the same time, shall be counted for the purpose of this Article as one conviction." *Id.* § 2(A).

¶ 19    Contrary to defendant's argument, we find there is no legislative "oversight" for us to correct. We determine that home invasion based on criminal sexual assault is unquestionably a registerable sex offense under the Act. To the extent defendant suggests this result is somehow "absurd" or a "double enhancement," we find neither description is apt. Sex offender registration is, constitutionally, a world apart from enhanced sentencing penalties. Registration "is merely a collateral consequence of the defendant's conviction" (*People v. Presley*, 2012 IL App (2d) 100617, ¶ 28), rather than part of the punishment of his sentence. See *People v. Cornelius*, 213 Ill. 2d 178, 209 (2004) (noting the nonpunitive purposes of the Act and related notification laws).

¶ 20    The primary purpose of registration and notification is, of course, the protection of the public. *Id.*; see also *People v. Pearse*, 2017 IL 121072, ¶ 41. We note that there is a national consensus on sex offender registration and public notification. See *Reynolds v. United States*, 565 U.S. 432, 434 (2012). Consequently, under federal law, the term "sex offense" means *inter alia* all offenses "involving a sexual act or sexual contact with another." 34 U.S.C. § 20911(5)(A)(i) (2018); see *Gundy v. United States*, 588 U.S. 128, 132-34 (2019) (plurality opinion) (noting "[s]uch an individual must register *** in every State where he resides, works, or studies").

¶ 21    We fail to see how a strained reading of our state's Act—one that would require registration when a person commits a sex offense, say, on a public way, but *not* for an offender who broke into

a person's home and committed the very same offense—would aid the General Assembly in its efforts to deter crime and promote public safety in Illinois. We therefore hold that defendant is indeed a sex offender subject to registration under the Act.

¶ 22 Although not discussed by the parties, we observe that the court's decision in *People v. Profit*, 2021 IL App (1st) 170744, provides a helpful backdrop in this case. There, the court analyzed "whether a finding of guilt on an *unsentenced* offense" required registration under the related Murderer and Violent Offender Against Youth Registration Act (730 ILCS 154/1 *et seq.* (West 2016)). (Emphasis added.) *Profit*, 2021 IL App (1st) 170744, ¶ 39. There, at sentencing, the State conceded that a registration offense should merge into a greater nonregistration offense and the court held that registration could not be premised on the conviction of the merged offense. *Profit*, 2021 IL App (1st) 170744, ¶ 44. Here, however, our conclusion is that defendant must register under SORA based on the offense he was *convicted* of—home invasion based on the commission of a sex offense, to wit, criminal sexual assault. Accordingly, *Profit* is distinguishable.

¶ 23                              III. CONCLUSION

¶ 24 For the reasons stated, we vacate defendant's criminal sexual assault conviction (count III) and one of his home invasion convictions (count II). We also vacate that portion of the sentencing order requiring defendant to serve 85% of his sentence. In all other respects, we affirm the judgment of the circuit court of Kane County.

¶ 25 Affirmed as modified.

*People v. Carter*, **2024 IL App (2d) 230234**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 19-CF-1167; the Hon. Alice C. Tracy, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Christopher McCoy, and Sade V. Edwards, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Mosser, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and David S. Friedland, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |